UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

LEILA FAWAZ,

    Defendant.

_____/

Case: 2:21-cr-20576
Judge: Michelson, Laurie J.
MJ: Patti, Anthony P.
Filed: 09-09-2021 At 04:12 PM
INDI USA VS FAWAZ (DP)

VIO: 18 U.S.C. § 1347

## INDICTMENT

**THE GRAND JURY CHARGES**:

## GENERAL ALLEGATIONS

At all times relevant to this Indictment:

### The Pharmacy

1. Drug Max, Inc. ("Drug Max") was a pharmacy and Michigan corporation located at 5472 Schaefer Road, Dearborn, Michigan 48126.

### Defendant

2. Defendant LEILA FAWAZ, a resident of Wayne County, Michigan, was the owner and pharmacist-in-charge of Drug Max.

**The Medicare and Medicaid Programs**

3. The Medicare program ("Medicare") was a federal health care program providing benefits to persons who were 65 years of age or older or disabled. Medicare was administered by the Centers for Medicare and Medicaid Services ("CMS"), a federal agency under the United States Department of Health and Human Services ("HHS"). Individuals who received benefits under Medicare were referred to as Medicare "beneficiaries."

4. Medicare covered different types of benefits and was separated into different program "parts." Medicare Part D subsidized the cost of prescription drugs for Medicare beneficiaries in the United States. Generally, Medicare Part D covered part or all of the costs of prescription drugs dispensed to a Medicare beneficiary if, among other requirements, the prescription drugs were medically necessary and ordered by a physician.

5. Physicians, pharmacies, and other health care providers that provided medical services that were to be reimbursed by Medicare were referred to as Medicare "providers." To participate in Medicare, providers were required to submit applications in which the providers agreed to comply with all Medicare-related policies and procedures, rules, and regulations issued by CMS and its agents and contractors, including those governing reimbursement, and furthermore, certified

that they would not knowingly present, or cause to be presented, false and fraudulent claims.

6. If Medicare approved a provider's application, Medicare assigned the provider a Medicare "provider number," ("NPI") which was used for the processing and payment of claims.

7. In order to receive Medicare Part D benefits, a beneficiary enrolled in one of several Medicare drug plans. Medicare drug plans were operated by private health care insurance companies approved by Medicare. Those companies were often referred to as drug plan "sponsors." A beneficiary in a Medicare drug plan could fill a prescription at a pharmacy and use his or her plan to pay for some or all of the prescription drugs.

8. Medicare, through CMS, compensated the Medicare drug plan sponsors for providing prescription drug benefits to beneficiaries. Medicare paid the sponsors a monthly fee for each Medicare beneficiary enrolled in the sponsors' plans. Such payments were called capitation fees. The capitation fee was adjusted periodically based on various factors, including the beneficiary's medical conditions. In addition, in some cases where a sponsor's expenses for a beneficiary's prescription drugs exceeded that beneficiary's capitation fee, Medicare reimbursed the sponsor for a portion of those additional expenses.

9. The Michigan Medicaid program ("Medicaid") was a federal and state funded health care program providing benefits to individuals and families who met specified financial and other eligibility requirements, and certain other individuals who lacked adequate resources to pay for medical care. CMS was responsible for overseeing Medicaid in participating states, including Michigan. Individuals who received benefits under Medicaid were referred to as Medicaid "beneficiaries."

10. Medicaid covered the costs of certain medical services, products, and benefits, including prescription drug benefits, for Medicaid beneficiaries. Generally, Medicaid covered part or all of the costs of prescription drugs dispensed to a Medicaid beneficiary if, among other requirements, the prescription drugs were medically necessary and ordered by a physician.

11. Medicaid paid for covered services either through what was called Medicaid "fee-for-service" or through Medicaid health plans.

12. Medicare, Medicare drug plan sponsors, Medicaid, and Medicaid health plans were each a "health care benefit program," as defined by Title 18, United States Code, Section 24(b), and a "Federal health care program," as defined by Title 42, United States Code, Section 1320a-7b(f).

### The Private Health Insurance Program

13. Blue Cross and Blue Shield of Michigan ("BCBS") was a nonprofit, privately operated insurance company authorized and licensed to do business in the

state of Michigan. BCBS provided health care benefits, including prescription drug benefits, to member entities and individuals. Individuals insured by BCBS were referred to as BCBS "members."

14. BCBS had agreements with participating providers, including pharmacies, to furnish medical services to BCBS members.

15. BCBS was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b).

### Pharmacy Benefit Managers

16. Pharmacy benefit managers ("PBMs") managed prescription drug benefits provided by Medicare, Medicare drug plan sponsors, Medicaid, Medicaid health plans, and BCBS. PBMs received, adjudicated, and paid claims on behalf of the health care benefit programs.

17. Upon dispensing a prescription drug to a beneficiary or member, the pharmacy submitted a claim, typically electronically, to the PBM acting on behalf of the specific health care benefit program. The PBM, on behalf of the health care benefit program, reimbursed the pharmacy, typically electronically, through direct deposits into accounts held, and previously identified, by the pharmacy.

18. CVS Caremark, OptumRx, and Express Scripts were three of several PBMs that managed prescription drug benefits for Medicare, Medicare drug plan

sponsors, Medicaid, and Medicaid health plans Express Scripts managed prescription drug benefits for BCBS.

19. CVS Caremark and other PBMs maintained agreements stating that pharmacies were allowed fourteen (14) days from the date of fill to submit claims for reimbursement to PBMs. These agreements also stated that pharmacies were allowed fourteen (14) days from the date of fill to reverse claims for medications that were not dispensed.

**COUNTS 1-4**
**Health Care Fraud**
**(18 U.S.C. §§ 1347 and 2)**
**LEILA FAWAZ**

20. Paragraphs 1 through 19 of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

21. Beginning in or around January 2014, and continuing through at least in or around May 2019, in Wayne County, in the Eastern District of Michigan, and elsewhere, LEILA FAWAZ, as specified below, did knowingly and willfully execute, and attempt to execute, a scheme and artifice to defraud health care benefit programs affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, Medicare drug plan sponsors, Medicaid, Medicaid health plans, and BCBS drug plan sponsors, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under

the custody and control of, said health care benefit programs, in connection with the delivery of and payment for health care benefits, items, and services.

### Purpose of the Scheme and Artifice

22. It was the object and purpose of the scheme and artifice for LEILA FAWAZ to unlawfully enrich herself by, among other things: (a) submitting, and causing the submission of false and fraudulent claims to Medicare, Medicare drug plan sponsors, Medicaid, Medicaid health plans, and BCBS; (b) concealing, and causing the concealment of, the submission of false and fraudulent claims to Medicare, Medicare drug plan sponsors, Medicaid, Medicaid health plans, and BCBS, and the receipt and transfer of the proceeds of the fraud; and (c) diverting fraud proceeds for her personal use and benefit.

### The Scheme and Artifice

23. LEILA FAWAZ maintained an NPI for Drug Max to submit claims to Medicare, Medicare drug plan sponsors, Medicaid, Medicaid health plans, and BCBS.

24. LEILA FAWAZ, on behalf of Drug Max, entered into pharmacy provider agreements with CVS Caremark, OptumRX, and Express Scripts, among other PBMs.

25. LEILA FAWAZ, purchased medications, including Victoza Inj 18 mg/3ml, from certain pharmaceutical wholesalers for the purpose of dispensing to beneficiaries and members.

26. LEILA FAWAZ submitted, and caused the submission of, false and fraudulent claims to Medicare, Medicare drug plan sponsors, Medicaid, Medicaid health plans, and BCBS, on behalf of Drug Max for prescription drugs that were not dispensed.

27. LEILA FAWAZ submitted, and caused the submission of, false and fraudulent claims to Medicare, Medicare drug plan sponsors, Medicaid, Medicaid health plans, and BCBS, on behalf of Drug Max, for drugs purportedly dispensed, including Victoza Inj 18 mg/3ml, in quantities that exceeded the amount Drug Max actually purchased from pharmaceutical wholesalers.

28. LEILA FAWAZ failed to reverse claims for medications that were not dispensed, which allowed Drug Max to maximize the amount of proceeds obtained from Medicare, Medicare drug plan sponsors, Medicaid, Medicaid health plans, and BCBS.

29. False and fraudulent claims that LEILA FAWAZ electronically submitted, and caused to be electronically submitted, to BCBS were processed and adjudicated electronically by Express Scripts.

30. LEILA FAWAZ submitted and caused to be submitted at least $2,179,645.53 in false and fraudulent claims to Medicare, Medicare drug plan sponsors, Medicaid, Medicaid health plans on behalf of Drug Max.

31. LEILA FAWAZ submitted and caused to be submitted at least $96,904.51 in false and fraudulent claims to BCBS on behalf of Drug Max.

32. LEILA FAWAZ personally profited from their participation in the scheme by receiving fraud proceeds for her personal use and benefit.

### Acts in Execution of the Scheme and Artifice

33. On or about the dates set forth below, in Wayne County, in the Eastern District of Michigan, LEILA FAWAZ did knowingly and willfully execute, and attempt to execute, a scheme and artifice to defraud Medicare, Medicare drug plan sponsors, Medicaid, Medicaid health plans, and BCBS, in that LEILA FAWAZ submitted and caused the submission of false and fraudulent claims for payment and falsely represented that Drug Max provided prescription medications to Medicaid beneficiaries, as described in Paragraphs 23 to 32 of this Indictment, as if they were dispensed to beneficiaries, but in fact never were dispensed to those beneficiaries, with each execution set forth below forming a separate count:

| Count | Beneficiary | Approx. Purported Service Date | Description of Prescription Medication | Approx. Paid Amount |
|---|---|---|---|---|
| 1 | H.B | 2/23/2017 | Victoza Inj 18 mg/3ml | $746.39 |

| Count | Beneficiary | Approx. Purported Service Date | Description of Prescription Medication | Approx. Paid Amount |
|---|---|---|---|---|
| 2 | H.B. | 4/14/2017 | Victoza Inj 18 mg/3ml | $746.39 |
| 3 | A.R. | 7/31/2017 | Victoza Inj 18 mg/3ml | $809.53 |
| 4 | A.R. | 5/31/2019 | Victoza Inj 18 mg/3ml | $899.46 |

Each in violation of Title 18, United States Code, Sections 1347 and 2.

## CRIMINAL FORFEITURE ALLEGATIONS
(18 U.S.C. § 982(a)(7); 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461)

34. The allegations contained in Counts One through Four of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeiture pursuant to 18 U.S.C. §§ 981 and 982, and 28 U.S.C. § 2461.

35. Upon conviction of the violation alleged in Counts One through Four of this Indictment, the convicted defendant shall forfeit to the United States (a) any property, real or personal, that constitutes or is derived from proceeds obtained, directly or indirectly, as a result of such violation, pursuant to 18 U.S.C. § 981(a)(1)(C) together with 28 U.S.C. § 2461, and (b) any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense, pursuant to 18 U.S.C. § 982(a)(7).

36. Pursuant to 18 U.S.C. § 982(a)(7), upon conviction of any of the violations alleged in Counts One through Four of this Indictment, the convicted

defendant shall forfeit to the United States any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense(s).

37. <u>Substitute Assets</u>: If the property described above as being subject to forfeiture, as a result of any act or omission of the convicted defendant:

    a. Cannot be located upon the exercise of due diligence;

    b. Has been transferred or sold to, or deposited with, a third party;

    c. Has been placed beyond the jurisdiction of the Court;

    d. Has been substantially diminished in value; or

    e. Has been commingled with other property that cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p) as incorporated by 18 U.S.C. § 982(b) and/or 28 U.S.C. § 2461, to seek to forfeit any other property of such defendant up to the value of the forfeitable property described above.

38. <u>Money Judgment</u>: Upon being convicted of violating any of the offenses alleged in this Indictment, the convicted defendant shall be ordered to pay the United States a sum of money equal to the total amount of proceeds the convicted defendant obtained as a result of such violation(s).

                                             THIS IS A TRUE BILL.

                                             s/Grand Jury Foreperson
                                             Grand Jury Foreperson

SAIMA S. MOHSIN
ACTING UNITED STATES ATTORNEY

JOSEPH S. BEEMSTERBOER
Acting Chief
Criminal Division, Fraud Section
U.S. Department of Justice

ALLAN J. MEDINA
Chief, Health Care Fraud Unit
Criminal Division, Fraud Section
U.S. Department of Justice

S/Regina R. Mccullough
REGINA R. MCCULLOUGH
Chief, Health Care Fraud Unit
United States Attorney's Office
Eastern District of Michigan

s/Shankar Ramamurthy
SHANKAR RAMAMURTHY
Trial Attorney
Criminal Division, Fraud Section
U.S. Department of Justice
211 W. Fort Street, Suite 2001
Detroit, MI 48226
Phone: (202) 924-5368
Email: shankar.ramamurthy@usdoj.gov

Dated: September 9, 2021

| United States District Court<br>Eastern District of Michigan | Criminal Case Cover Sheet | Case Number |
|---|---|---|

NOTE: It is the responsibility of the Assistant U.S. Attorney signing this form to complete it accurately in all respects.

| Companion Case Information | Companion Case Number: |
|---|---|
| This may be a companion case based upon LCrR 57.10 (b)(4)[1]: | Judge Assigned: |
| ☐ Yes  ☒ No | AUSA's Initials: |

**Case Title:** USA v. LEILA FAWAZ

**County where offense occurred :** Wayne County, Michigan

**Check One:** ☒ Felony    ☐ Misdemeanor    ☐ Petty

    ✓ Indictment/____Information --- **no** prior complaint.
    ____Indictment/____Information --- based upon prior complaint [Case number:                ]
    ____Indictment/____Information --- based upon **LCrR 57.10 (d)** *[Complete Superseding section below]*.

**Superseding Case Information**

**Superseding to Case No:** _____    **Judge:** _____

☐ Corrects errors; no additional charges or defendants.
☐ Involves, for plea purposes, different charges or adds counts.
☐ Embraces same subject matter but adds the additional defendants or charges below:

| **Defendant name** | **Charges** | **Prior Complaint (if applicable)** |
|---|---|---|

Please take notice that the below listed Assistant United States Attorney is the attorney of record for the above captioned case.

September 9, 2021
    Date

Shankar Ramamurthy, Trial Attorney
211 West Fort Street, Detroit, MI 48226
Phone:(202) 924-5368
Fax:   (313) 226-0816
E-Mail address: Shankar.Ramamurthy@usdoj.gov
Attorney Bar #:  IL 6306790

[1] Companion cases are matters in which it appears that (1) substantially similar evidence will be offered at trial, or (2) the same or related parties are present, and the cases arise out of the same transaction or occurrence. Cases may be companion cases even though one of them may have already been terminated.